<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL III</td></tr>
<tr>
<td>UNIÓN DE CONTADORES Y AUDITORES EXTERNOS DE LA CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Peticionaria<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Recurrido</td>
<td>TA2026CE00107</td>
<td>*CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil núm.: SJ2025CV09715 (602)<br><br>Sobre: Impugnación de Laudo de Arbitraje</td>
</tr>
</table>

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 26 de febrero de 2026.

Comparece ante este tribunal apelativo, la Unión de Contadores y Auditores Externos de la Corporación del Fondo del Seguro del Estado (la Unión o peticionaria) mediante el recurso de *certiorari* de epígrafe solicitándonos que revisemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 29 de diciembre de 2025, notificada el día siguiente. Mediante este dictamen, el foro primario resolvió *No Ha Lugar* a el recurso de *Impugnación de Laudo de Arbitraje Obrero Patronal* presentado por la Unión.

Por los fundamentos que expondremos a continuación, denegamos el auto de *certiorari* solicitado.

**I.**

El 14 de diciembre de 2021, la peticionaria presentó ante la Corporación del Fondo del Seguro del Estado (CFSE o la recurrida)

una reclamación a nombre de su unidad apropiada.[1] La Unión sostuvo que el 23 de noviembre de 2021, recibió unos Informes de Cambio por parte de la Sra. María F. Toledo Crespo (señora Crespo Toledo), Jefa de Nóminas de la Corporación del Fondo del Seguro del Estado. Además, alegó que mediante la aludida comunicación advino en conocimiento de que la CFSE no incorporó el monto de $100 mensuales al salario de los Contadores-Auditores a partir del 1 de julio de 2015. Por lo que solicitó la Designación y Selección de Árbitro en el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos. Por su parte, la CFSE argumentó que la reclamación estaba prescrita y que la peticionaria no siguió el procedimiento administrativo para las querellas ante la agencia. Por otra parte, alegó que, en la alternativa, el pago de $1200 que emitió el 29 de junio de 2015, cumplió con los acuerdos del Convenio Colectivo pactado entre las partes.

Transcurridos varios incidentes procesales, el 24 de octubre de 2024, se celebró una audiencia en la que se atendieron los reclamos presentados tanto por la peticionaria como por la CFSE. Así las cosas, el 13 de enero de 2025, quedó sometido el caso ante la Árbitra Liza Ocasio Oyola, luego de que fuesen presentados los memoriales de derecho. Evaluado el expediente del caso, la Árbitra emitió el *Laudo de Arbitraje A-26-261.* Por medio de este realizó la siguiente relación de hechos:[2]

RELACIÓN DE HECHOS

1) De la prueba sometida surgió que las partes regían sus relaciones obrero-patronales por medio de un Convenio Colectivo, el cual se firmó el 26 de noviembre de 2013. El mismo tuvo vigencia desde el 1 de marzo de 2013 hasta el 28 de febrero de 2018, según prorrogado.
2) El 26 de junio de 2015, las partes firmaron una ESTIPULACIÓN, a raíz de la Ley 66 de 1 7 de junio de 2014, que forma parte del Convenio Colectivo. En

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI, Entrada núm. 1).
[2] SUMAC TPI, Entrada núm. 1, Anejo 2, a las págs. 9-15.

lo pertinente a esta controversia expresaron, según redactado, lo siguiente:

[…]

Los asuntos que a continuación se detallan constituyen modificaciones temporales al Convenio Colectivo, así como economías para la Corporación, y serán efectivos por el término correspondiente al 1ro. de julio de 201 5 hasta el 30 de junio de 2016. Estas modificaciones son las siguientes: a. Artículo 20 (Aumento de salarios): Los aumentos establecidos en las Secciones 1 (c) y 1 (d) del Artículo 20 para entrar en vigor el 1ro. de marzo de 2015 y el 1ro. de marzo de 2016, por la cantidad de $325.00 mensuales y $125.00 mensual, respectivamente, se postergarán por un año. El monto total por concepto del pago por las mencionadas secciones del Artículo 20 correspondiente al año fiscal 2014-2015 y 2015-2016 se sumará a cualquier otro que pudiese otorgarse en el año fiscal 2016-2017. (Según acordado el año pasado, la CFSE emitirá el pago del aumento contemplado en el Artículo 20 (1) (b) del Convenio Colectivo el 30 de junio de 2015.)

[…]

14. La presente Estipulación y su anejo formarán parte del Convenio Colectivo suscrito por las partes para los años 2013 al 2018 [...]

3) El 30 de junio de 2015, la CFSE emitió, según intitulada, una Lista de Unionados de UCAECFSE, que incluye los nombres de 50 querellantes. La misma está acompañada con los Informes de Cambio de 47 querellantes, ya que tres (3) de ellos se acogieron al retiro y renunciaron a reclamos pendientes de adjudicación como parte de las condiciones de retiro.

[…]

4) El 30 de junio de 2015, la CFSE emitió un Talonario de Pago de nómina por depósito directo a nombre del Sr. Javier O. Calderón Rivera. El recibo en cuestión reflejó que el importe fue por la cantidad de $1,200.00, previo a las deducciones de Contribución sobre Ingresos, Seguro Social, Medicare, Retiro y AEELA, para un pago neto de $856.20.

5) El 27 de septiembre de 2021, las partes firmaron un documento intitulado Acuerdo a Base de la Ley Para Garantizar la Negociación Colectiva. En lo pertinente al caso de autos, las partes acordaron, según redactado, lo siguiente:

NOVENO: Que, a tenor con el ordenamiento legal vigente, a la fecha en que se suscribe este Acuerdo y la necesidad que tiene las partes de mantener el convenio colectivo vigente, estas ACUERDAN:

a) A partir del 1 de julio de 2021, se prorroga la vigencia de los artículos no económicos del convenio colectivo hasta el 30 de junio de 2022.
b) Que los artículos económicos del convenio colectivo se mantendrán conforme han estado a la

fecha de vigencia de la presente Estipulación, hasta el 30 de junio de 2022.

c) Aquellos beneficios marginales que reciben actualmente los empleados unionados permanecerán inalterados.

[…]

f) A partir del 1 de julio de 2022, las partes convienen que iniciarán el proceso de negociación de un nuevo convenio colectivo, ello de conformidad en lo dispuesto en el Artículo 65 del Convenio Colectivo vigente, en lo pertinente a la notificación en caso de interesar enmiendas al mismo, incluyendo la expresión de la naturaleza del cambio o cambios que se desean realizar. De no mediar notificación antes indicada, el Convenio Colectivo y este Acuerdo se renovará automáticamente por el término de un año adicional.

[…]

El 23 de noviembre de 2021, el Sr. Juan A. Fuste Torres, presidente de la Unión, le dirigió a la Sra. María F. Toledo Crespo, jefa de la Oficina de Nómina de la Corporación, un correo electrónico. En el mismo le agradeció a la señora Toledo por los Informes de Cambio que recibió del 2014, y le informó que no había recibido los informes de 2015, entre otros asuntos.

6) El 8 de enero de 2021, la árbitro, Ruth Couto Marrero, emitió el Laudo de Arbitraje Núm. A-14-2105, sobre Aumento Salarial. En el mismo la árbitro adjudicó los méritos del caso y el pago de honorarios de abogado.

7) El 27 de mayo de 2021, el Tribunal de Primera Instancia, Sala Superior de San Juan, dictó sentencia sobre Impugnación del Laudo de Arbitraje Caso Núm. A-14-2015. El Tribunal declaró parcialmente NO HA LUGAR la Solicitud de Revisión Judicial del Laudo. Confirmó el aspecto sustantivo y modificó la asignación de Honorarios de Abogado.

8) El **14 de diciembre de 2021**, la Unión incoó una reclamación a nombre de su unidad apropiada. Ésta **reclamó que recibieron los Informes de Cambio el 23 de noviembre de 2021**, y que la CFSE no incorporó los $100.00 mensuales al salario de los Contadores Auditores **a partir del 1 de julio de 2015**. Así las cosas, la Unión, radicó una Solicitud para Designación y Selección de Árbitro en el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, para dilucidar la referida controversia.

Asimismo, la juzgadora razonó que:[3]

Sobre la arbitrabilidad procesal planteada, sabido es que este recurso procesal se relaciona con los periodos y términos acordados en el procesamiento de querellas

---

[3] SUMAC TPI, Entrada núm. 1, Anejo 2, a las págs. 20-23. Énfasis nuestro. Notas al calce omitidas.

dispuesto en el Convenio Colectivo. Los términos que las partes fijan en el mismo son de estricto cumplimiento para ambas. Sobre dicho particular, el Tribunal Supremo de Puerto Rico ha expresado que una vez las partes acuerdan someter las controversias surgidas entre ambas a un proceso de arbitraje, los tribunales carecen de discreción respecto a su eficacia y están obligados a dar cumplimiento a lo expresamente pactado. **La arbitrabilidad procesal versa, específicamente, sobre si el agravio se presentó dentro del término provisto en el Convenio Colectivo**.

Luego de evaluar y examinar el aspecto procesal planteado, es de rigor advertir que las partes acordaron, en el Convenio Colectivo, en su Artículo 7 – Procedimiento para Atender y Resolver Querellas, supra, todo lo relacionado con la tramitación de las querellas que surjan durante la vigencia de éste. Acorde con lo anterior, tenemos que interpretar la totalidad de éste para fijar un sentido verdadero, lógico, racional y sensato. En este caso, las partes negociaron, claramente, atender y tramitar las querellas en el antedicho Artículo en dos (2) fases: la administrativa y la adjudicativa. Para que se pueda atender en la fase administrativa, las querellas no pueden ser susceptibles a ser resueltas por el supervisor inmediato. De la prueba surgió que la Unión comenzó el curso de su querella cuando la jefa de la Oficina de Nómina, María F. Toledo Crespo, le notificó al presidente de la Unión, Juan A. Fusté Torres, mediante correo electrónico, que le incluía los Informes de Cambio por la cantidad de $1,200.00 para 50 empleados pertenecientes a la unidad apropiada efectivo al 30 de junio de 2015. Dicho correo electrónico fue contestado por el señor Fusté con un agradecimiento, por haber enviado los Informes de Cambio e indicando que ya habían recibido los del 2014, no así los del 2015. Como podemos observar, el pago global de los $1,200.00, objeto de esta reclamación, no estaba en control del supervisor inmediato, Fase Administrativa, sino en la Fase Adjudicativa, Inciso 2. Así pues, superado ese proceso es imprescindible continuar y evaluar la parte B: Fase Adjudicativa. **Dicha parte dispone, claramente, que la misma se activará no más tarde de quince (15) días laborables; ello a partir del conocimiento de los hechos que dan lugar a la querella y/o notificación por escrito de la acción de personal que afecte al empleado**. **En este caso, para determinar si el agravio se procesó dentro del término prescrito nos enmarcamos en el Talonario de Pago (Exhibit - 4-Conjunto)**. Aunque la Unión expresó que dicho documento no indica cuándo la CFSE notificó al empleado copia de éste, o cuándo la Unión lo recibió, **lo cierto es que el 30 de junio de 2015, los querellantes fueron notificados que un pago global de $1,200.00, se había depositado**. Por lo que, **en ese momento advinieron en conocimiento de que no había un incremento en su estructura salarial que enmarcaron, claramente, los hechos de esta controversia. De la prueba presentada se desprende que la Unión tenía quince (15) días laborables, a partir del 30 de junio de 2015, para radicar la querella en el Negociado de Conciliación y Arbitraje y no fue sino hasta el 14 de diciembre de 2021, que**

> **se radicó la misma, lo que, a primera vista demuestra que estaba fuera del término establecido**.
>
> Es de conocimiento general que los términos pactados en los Convenios Colectivos y para su ventilación en arbitraje, son de estricto cumplimiento. **En el caso de autos, la prueba demostró que la Unión incumplió con el Artículo 7, Procedimiento para Atender y Resolver Querellas pactado por las partes. Por consiguiente, concluimos que un agravio presentado a destiempo se considerará que no es arbitrable procesalmente, pues se pretende que la tramitación de los agravios sea rápida y diligente y en armonía con lo establecido por las partes en lo que concierne al Procedimiento para Atender y Resolver Querellas.** [Énfasis nuestro]

En consecuencia, la Árbitra determinó que la querella incoada por la Unión era una arbitrable en su modalidad sustantiva, mas no así en la procesal. Ello, a base de que el recurso se presentó fuera del término de quince (15) laborables establecidos en el convenio. En consecuencia, ordenó la desestimación del litigio producto de la querella presentada por la Unión.

En desacuerdo, el 22 de octubre de 2025, la peticionaria presentó una *Demanda* intitulada *Impugnación de Laudo de Arbitraje Obrero/Patronal*.[4] En esta adujo que la Árbitra erró en su determinación en cuanto a que la acción estaba prescrita, puesto que la fecha que debe tomarse en consideración para la querella es la correspondiente a la entrega de los Informes de Cambio del 2015 a la Unión, el 23 de noviembre de 2021. Arguyó que la fecha considerada, correspondiente al talonario de pago a favor de uno de los empleados unionados en el 2015, no debió considerarse para los fines de la determinación. Ello, debido a que el pago realizado al empleado por la suma de $1,200 por la CFSE no equivale a su reclamo de que el aumento de $100 mensuales no ha figurado en la estructura salarial de los empleados que la peticionaria representa, en el periodo comprendido del 20 de junio de 2015 al presente.

---

[4] SUMAC TPI, Entrada núm. 1.

Luego, el 1 de diciembre de 2025, la parte recurrida presentó su réplica en *Oposición a Impugnación de Laudo Arbitral.*[5] En síntesis, la CFSE alegó que desde que se emitió el pago global de $1,200 en el 2015, tanto los empleados unionados como la Unión tuvieron pleno conocimiento del mismo, así como de su naturaleza. Igualmente, adujo que estos sabían el concepto por el cual se emitió el referido pago y cómo se reflejó el pago en la nómina. Sostuvo que luego de la emisión del mencionado pago, la peticionaria nunca presentó agravio, inquietud o protesta alguna. Además, señaló que durante los años subsiguientes la Unión tampoco radicó querella alguna relacionada a la falta de integración salarial del alegado aumento. Por consiguiente, precisó que la acción estaba prescrita.

Evaluados los escritos de las partes y la evidencia presentada, el 29 de diciembre de 2025, notificada el 30 de diciembre siguiente, el TPI emitió la *Sentencia* apelada.[6] Mediante esta, el foro primario determinó que las conclusiones de la Árbitra fueron fundamentadas en el récord del caso y a base de una interpretación razonable del convenio colectivo. Así, concluyó que la peticionaria recibió en junio de 2015, una notificación adecuada de la determinación de la agencia; sin embargo, está no impugnó la acción del patrono hasta varios años después. En consecuencia, declaró *No Ha Lugar* a el recurso presentado por la Unión.

Inconforme con el dictamen, la peticionaria acude ante esta *Curia* imputándole al foro de primera instancia haber incurrido en los siguientes errores:

> **ERRÓ EL HONORABLE TRIBUNAL EN SU ANÁLISIS AL RESOLVER QUE LA UCAECFSE, COMO REPRESENTANTE EXCLUSIVO, INCUMPLIÓ EN SU TRÁMITE CON LOS TÉRMINOS DISPUESTOS EN EL ARTÍCULO 7 (B), 'FASE ADJUDICATIVA', DEL CONVENIO COLECTIVO, PARA EL PROCESAMIENTO DE LA PRESENTE QUERELLA O QUEJA, AL TOMAR EN CONSIDERACIÓN LA FECHA DE UN TALONARIO DE CHEQUE Y NO LA FECHA EN**

---

[5] SUMAC TPI, Entrada núm. 4.
[6] SUMAC TPI, Entrada núm. 5.

**QUE LA JEFA DE NÓMINAS ENTREGÓ LOS INFORMES DE CAMBIO CORRESPONDIENTES AL AÑO 2015.**

**ERRÓ EL HONORABLE TRIBUNAL AL CONFUNDIR EL PAGO DE $1,200.00 EFECTUADO POR LA CFSE EN EL AÑO 2015 A UNO DE LOS EMPLEADOS DE LA UNIDAD APROPIADA REPRESENTADO POR LA UCAECFSE CON EL RECLAMO O QUERELLA DE LA UNIÓN DE QUE EL EQUIVALENTE EN DICHO PAGO DE $100.00 NO SE HICIERA FIGURAR EN LA ESTRUCTURA SALARIAL DE LOS EMPLEADOS REPRESENTADOS POR LA UNIÓN, A PARTIR DEL 30 DE JUNIO DE 2015 Y HASTA EL PRESENTE.**

El 9 de febrero de 2026, dictamos una *Resolución* concediéndole a la parte recurrida hasta el 18 de febrero de 2026 para expresarse. Luego de varios trámites ante este tribunal, el 18 de febrero de 2026, la parte recurrida presentó la *Oposición a la Expedición del Auto de Certiorari*. Además, ese mismo día, la recurrida instó una *Moción, Sometiendo Índice de Apéndice*, la cual damos por recibida. Así, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

### Auto de *Certiorari*

En cuanto a la revisión apelativa de una sentencia final del Tribunal de Primera Instancia sobre la impugnación de un laudo arbitral del Negociado de Conciliación y Arbitraje, el remedio disponible es el recurso de *certiorari* ante el Tribunal de Apelaciones. *Constructora Estelar v. Aut Edif. Púb.,* 183 DPR 1, 23 (2011); *Hosp. del Maestro v. U.N.T.S,* 151 DPR 934, 942 (2000); Regla 32(C) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 49, 215 DPR __ (2025).

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León v.*

*AIG*, 205 DPR 163, 174 (2020) *IG Builders at al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, a las págs. 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, a las págs. 90-92 (2001). Para poder ejercer sabiamente nuestra facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025)., que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, *supra*, a la pág. 176.

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción;

o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, a las págs. 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, a la pág. 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140, a la pág.155 (2000).

**Revisión Judicial de Laudo Arbitral**

En términos generales, se ha definido el arbitraje como el "procedimiento para resolver controversias, sometiéndolas a un árbitro o a un cuerpo de árbitros, para luego de considerar las pruebas, emitir un laudo". *Hope Tucker v. Money Group, LLC y otros*, 2026 TSPR 9, págs. 7-8, 217 DPR __ (2026); *Aquino González v. AEELA*, 182 DPR 1, 19 (2011). Constituye un método alterno para la solución de conflictos, cuyo propósito va dirigido a que las partes presenten sus controversias ante un ente neutral con autoridad para adjudicar e imponer una decisión a las partes. *Íd.*

En cuanto a la revisión judicial de un laudo arbitral, nuestro Tribunal Supremo ha enfatizado que, como norma general, merecen de los tribunales una gran deferencia, salvo cuando se demuestre la existencia de alguna de las siguientes causales: (1) el fraude, (2) conducta impropia, (3) falta del debido procedimiento en la celebración de la vista, (4) violación de la política pública, (5) falta de jurisdicción, y (6) que el laudo no resuelva todas las cuestiones en controversia que se sometieron. *Landrau Cabezudo et al. v. Puertos et al.,* 2025 TSPR 7, pág. 29, 215 DPR __ (2025); *Aquino González v. AEELA, supra,* a las págs. 25 y 28.

En cuanto a la deferencia que merecen los laudos, nuestro más alto foro ha señalado específicamente lo siguiente:

> "[L]os tribunales confieren gran deferencia a las interpretaciones que haga el árbitro en el laudo de arbitraje relacionado a lo acordado en el convenio colectivo. Por tal razón, la revisión judicial de los laudos emitidos en el procedimiento de arbitraje **se limitará a las instancias en las cuales quede demostrada la existencia de fraude, conducta impropia del árbitro,**

**falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa o que el** laudo sea contrario a la política pública. Lo anterior implica que un laudo no puede anularse por meros errores de criterio ya sean estos en cuanto a la ley o en cuanto a los hechos." Casos citados omitidos. [Énfasis nuestro]. *C.O.P.R. v. S.P.U.,* 181 DPR 299, 328-329 (2011).

No obstante, la regla de autorrestricción judicial tiene su excepción, siendo ésta que "los tribunales pueden intervenir y revisar si el convenio o acuerdo de sumisión, según sea el caso, consigna expresamente que el laudo sea resuelto conforme a derecho, y ello con referencia al derecho aplicable". *Landrau Cabezudo et al. v. Puertos et al., supra; Aquino González v. AEELA,* supra, a la pág. 28. Por consiguiente, cuando en un laudo se determina que el árbitro deberá resolver conforme a derecho, "el árbitro no puede ignorar las normas de derecho sustantivo en el campo del derecho laboral y debe resolver las controversias de acuerdo con las doctrinas legales prevalecientes". *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 449 (2007). Por ende, cuando un laudo está condicionado a emitirse conforme a derecho, "confiere a las partes la certidumbre de que el resultado arbitral estará estrictamente aferrado a los límites de la ley, y que no se concederá un remedio más allá del provisto por nuestro andamiaje jurídico". *Landrau Cabezudo et al. v. Puertos et al., supra; C.O.P.R. v. S.P.U.,* supra, a la pág. 347.

Por otro lado, el tribunal de instancia no debe inclinarse fácilmente a decretar la nulidad del laudo, a menos que efectivamente el mismo no haya resuelto la controversia con arreglo a derecho, según lo pactaran las partes. *Depto. Educ. v. Díaz Maldonado*, 183 DPR 315, 327 (2011). "Debe tenerse presente que una discrepancia de criterio con el laudo no justifica la intervención judicial pues destruye los propósitos fundamentales del arbitraje de resolver las controversias rápidamente, sin los costos y demoras del

proceso judicial." *Rivera v. Samaritano & Co. Inc.,* 108 DPR 604, 609 (1979).

**III.**

En esencia, la Unión recurrió ante este foro apelativo solicitando la revocación de la *Sentencia* dictada por el TPI, mediante la cual se confirmó el *Laudo* revisado, por entender que la Árbitra razonablemente concluyó que la reclamación estaba prescrita. Esto, al entender que los miembros de la Unión recibieron una notificación adecuada en junio 2015 y no fue hasta el 2021, que impugnaron la acción del patrono.

En la discusión de los errores, la peticionaria planteó, además, que el 23 de noviembre de 2021, fecha en que se recibieron los informes de cambio del 2015, constituye el evento que interrumpió los términos prescriptivos para instar la reclamación. Por lo que, sostiene que su reclamo no ha prescrito. Igualmente, la Unión arguyó que no debe confundirse el pago realizado por la CFSE por $1,200 en el 2015 a uno de sus empleados unionados, con el reclamo presentado. En este punto, la Unión expuso que el equivalente a tal pago de $100 no ha figurado en la estructura salarial de los empleados que representa la Unión, en el periodo comprendido de 30 de junio de 2015 al presente.

Tras evaluar detenidamente los argumentos planteados en el recurso y el expediente apelativo, determinamos que no procede la expedición del auto solicitado. Los fundamentos aducidos por la Unión no permiten activar nuestra jurisdicción discrecional en el caso de autos. Esto, máxime cuando la decisión recurrida está debidamente apoyada en las disposiciones del Convenio Colectivo suscrito por las partes.

En fin, examinado el dictamen impugnado, a la luz de los criterios de la Regla 40 de nuestro Reglamento, *supra*, y ante la ausencia de prejuicio, parcialidad o error en la aplicación de una

norma jurídica, estamos impedidos de variar el dictamen cuya revisión se nos solicita. La peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa, en este momento sobre el asunto planteado, constituiría un fracaso a la justicia.

**IV.**

Por los fundamentos antes expuestos, procede denegar el recurso de *certiorari* solicitado.

Notifíquese

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones